OPINION
{¶ 1} Appellant, See-Treon Andree Dothard ("Dothard"), appeals from the judgment entered by the Ashtabula County Court of Common Pleas. Following a jury trial, Dothard was convicted of aggravated robbery and kidnapping. Dothard was sentenced to terms of seven years on each offense, with the sentences to be served concurrently.
 {¶ 2} Dothard attended grade school with Tony Olds ("Olds") in either the third or fourth grade. The two did not see each other again until January 26, 2001, when they met outside a grocery store.
 {¶ 3} On January 31, 2001, Dothard and Olds drove from Youngstown to Ashtabula County. Around 2:00 p.m., they entered the Nordix Gun Shop in Saybrook Township. Perry Northrop is the owner of the Nordix Gun Shop. At the time Dothard and Olds entered the gun shop, Clint Brown, a regular customer, was talking with Mr. Northtrop. Mr. Brown testified that Olds was acting unusual in the store. Mr. Brown and Mr. Northrop both testified that Dothard asked if a gas station across the street had a restroom. Dothard then left the store for a few minutes, but did not use the restroom at the gas station. About fifteen to twenty minutes after they entered the store, Olds and Dothard left together.
 {¶ 4} Shortly after 5:00 p.m., Dothard and Olds returned to the gun shop. At this time, Mr. Northrop was alone in the store. Dothard asked Mr. Northrop a few questions about guns on a display rack. Olds then drew a pistol and pointed it at Mr. Northrop's head. Mr. Northrop testified that Olds ordered Dothard to close the curtains. Dothard closed the curtains on two of the windows. Olds then ordered Dothard to check Mr. Northrop for weapons. Dothard essentially frisked Mr. Northrop and discovered that he did not have a weapon on him. Olds then instructed Dothard to tape Mr. Northrop. Mr. Northrop testified that Dothard was picking at, and trying to peel, a roll of duct tape. While this was occurring, Mr. Northrop escaped into a storage room and blocked himself in with his foot.
 {¶ 5} After waiting in the storage room for a few seconds, Mr. Northrop went back into the store's showroom and discovered that the men had left. He then went to the parking lot and watched as Dothard and Olds left in a car. A passerby wrote down the license plate number of the car, and this information was relayed to the authorities. About thirty minutes later, Olds' vehicle was stopped for speeding, and Olds and Dothard were arrested. When Dothard was taken into custody, garbage bags and six bullets were found in his pockets, and a roll of duct tape was found under the passenger seat of the car, where Dothard had been sitting.
 {¶ 6} Initially, both Dothard and Olds were to be tried together in a single trial. However, subsequent to jury selection, Olds decided to withdraw his plea of not guilty and pleaded guilty to the charges against him. Olds then testified against Dothard at trial, stating that the two of them had planned the robbery.
 {¶ 7} Dothard testified on his own behalf. He stated that he was unaware that Olds was going to pull the gun on Mr. Northrop. He further stated that the reason for going to Ashtabula that day was to meet some girls that were friends of Olds' cousin. Finally, he testified that he had been working with a friend that morning, cleaning out an old house in Youngstown, and this was the reason he had the tape and garbage bags in his pockets. He stated the bullets found in his pocket were from that house.
 {¶ 8} Dothard timely filed this appeal, raising two assignments of error. Dothard's first assignment of error is:
 {¶ 9} "The trial court erred by failing to notify appellant pursuant to R.C. 2929.19(B)(3) at the time of sentencing that he will be subject to post-release control pursuant to R.C. 2967.28."
 {¶ 10} In the instant matter, the trial court did not mention post-release control at the sentencing hearing. In addition, the trial court did not make any reference to post-release control in its judgment entry of sentence. Dothard was convicted of aggravated robbery and kidnapping. Respectively, these are first and second degree felonies. Post-release control is required for offenders who are imprisoned for first and second degree felonies.[1]
 {¶ 11} R.C. 2929.19(B) states, in relevant part:
 {¶ 12} "(3) Subject to division (B)(4) of this section, if the sentencing court determines at the sentencing hearing that a prison term is required, the court shall do all of the following:
 {¶ 13} "***
 {¶ 14} "(c) Notify the offender that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the first degree or second degree, for a felony sex offense, or for a felony of the third degree in the commission of which the offender caused or threatened to cause physical harm to a person;"
 {¶ 15} In addition, the Supreme Court of Ohio has held "[p]ursuant to 2967.28(B) and (C), a trial court must inform the defendant at sentencing or at the time of a plea hearing that post-release control is part of the defendant's sentence."[2]
 {¶ 16} In State v. Hyde, the Eighth Appellate District held that even though post-release control was mandatory for an offense, the fact that the trial court did not mention post-release control at the sentencing hearing or in its judgment entry indicated that post-release control was not part of the defendant's sentence.[3] We do not agree with this analysis. Rather, we follow the holding of the Seventh Appellate District, where the court remanded a matter for resentencing when the trial court did not mention post-release control at the sentencing hearing or in its judgment entry.[4]
 {¶ 17} The State v. Hyde holding essentially permits a trial court to use its discretion in deciding whether post-release control should be part of an offender's sentence. If the trial court would not want to impose post-release control, it could merely remain silent about the topic in the judgment entry of sentence. However, as the Seventh District held, "[b]y indicating that the sentencing court `shall do the following,' the legislature clearly placed a mandatory duty upon the trial court rather than granting it discretion."[5] We agree.
 {¶ 18} Courts have held that the failure to comply with the mandates of R.C. 2929.19(B)(3)(c) necessitates remanding the action to the trial court for resentencing.[6] Therefore, we will remand this case for resentencing in order for the trial court to comply with R.C.2929.19(B)(3).
 {¶ 19} Dothard's first assignment of error has merit.
 {¶ 20} Dothard's second assignment of error is:
 {¶ 21} "The appellant's convictions are against the manifest weight of the evidence."
 {¶ 22} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language:
 {¶ 23} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."[7]
 {¶ 24} Dothard admits to being in the gun shop on the day in question. Therefore, the only substantive question before the jury was whether Dothard was an accomplice of Olds in the crimes.
 {¶ 25} Although Dothard testified that he did not know that Olds intended to commit the armed robbery, the jury heard conflicting testimony from other witnesses. Specifically, Olds stated that the robbery was the purpose of the trip that day. Mr. Northrop testified that Dothard was actively participating in the robbery itself. He indicated that Dothard was the individual who closed the curtains, that Dothard frisked him, and that Dothard was attempting to peel the duct tape in order to tape his hands. Moreover, Dothard admitted to having bullets, garbage bags, and tape in his possession on the day in question.
 {¶ 26} The jury did not create a manifest miscarriage of justice by convicting Dothard of aggravated robbery and kidnapping.
 {¶ 27} Dothard's second assignment of error is without merit.
 {¶ 28} The judgment regarding Dothard's conviction is affirmed. However, having found merit in Dothard's first assignment of error, the judgment regarding Dothard's sentencing is reversed. This matter is remanded to the trial court for resentencing.
DONALD R. FORD and DIANE V. GRENDELL, JJ., concur.
[1] Woods v. Telb (2000), 89 Ohio St.3d 504, 508.
[2] Woods v. Telb, 89 Ohio St.3d 504, paragraph two of the syllabus.
[3] See State v. Hyde (Jan. 11, 2001), 8th Dist. No. 77592, 2001 Ohio App. LEXIS 81, at *16.
[4] See State v. Jenkins (Mar. 14, 2000), 7th Dist. No. 98-502 CA, 2000 Ohio App. LEXIS 1094, at *26.
[5] Id. at *25.
[6] See State v. Woods (Mar. 15, 2001), 8th Dist. No. 77713, 2001 Ohio App. LEXIS 1151, at *14; State v. Byler, 5th Dist. No. 01CA30, 2002-Ohio-4055, at ¶ 42-47.
[7] (Citations omitted.) State v. Thompkins (1997), 78 Ohio St.3d 380,387.